UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
:
PHILLIS LU SIMPSON,                                        :
:
                                    Plaintiff,            :
:
            -v-                                            :
:
WELLS FARGO BANK, et al.,                                  :
:
                                    Defendants.           :
:
--------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  02/01/2016
```

15-CV-1487 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiff Phillis Lu Simpson ("Plaintiff"), an attorney proceeding *pro se*, brings this suit
as the Administrator of the Estate of Linda Simpson ("Decedent").  To the extent relevant here,
Plaintiff alleges that Defendants American General Assurance Company ("AGAC") and AIG
Benefit Solutions ("AIG" and, together with AGAC, the "Insurance Defendants") wrongly failed
to pay the proceeds of a life insurance policy held by Decedent.  The Insurance Defendants now
move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims
against them.  For the reasons stated below, the Court converts the Insurance Defendants' motion
to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure and grants that motion.

## BACKGROUND

In October 2005, Decedent entered into a loan agreement with Wachovia Bank (now
Defendant Wells Fargo) secured by a deed to Decedent's home.  (Compl. (Docket No. 2)
¶¶ III(C)-(D)).  In conjunction with that loan, Wachovia offered Decedent the option to apply for
a life insurance policy from American General Life Assurance Company ("AGLAC"), which

would serve to pay off the balance of the loan in the event Decedent died.  (*Id.* ¶ III(E)).  Although the insurance policy was obtained in conjunction with the loan, the insurance policy was a distinct agreement between AGLAC and Decedent.  (*See id.*).

Decedent passed away on May 15, 2013, at the age of sixty-eight.  (*Id.* ¶ III(B)).  After Decedent's death, Plaintiff, as the administrator of Decedent's Estate, sought to recover the proceeds of the life insurance policy on behalf of the estate.  (*Id.* ¶ III(A)).  The Insurance Defendants (which had acquired AGLAC in the interim) advised Plaintiff that, under the terms of the insurance policy Decedent had purchased, her coverage automatically terminated when she turned sixty-six.  (*See id.*).  Because Decedent had turned sixty-six in 2010, the Insurance Defendants took the position that the policy was not in effect at the time of Decedent's death and, thus, that no benefits were payable.  (*See id.*).  Plaintiff brings this suit on behalf of Decedent's Estate, and asserts claims against both Wells Fargo and the Insurance Defendants.  The present motion is brought solely by the Insurance Defendants.

## DISCUSSION

### A.  Conversion of the Motion To Dismiss into a Motion for Summary Judgment

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court ordinarily "must confine itself to the four corners of the complaint."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks omitted).  Under Rule 12(d), however, if "matters outside the pleadings" are submitted with a Rule 12(b)(6) motion, a court may consider those documents and treat the motion "as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Before converting a motion to dismiss into a motion for summary judgment, a court must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  "Ordinarily," however, "formal notice" of an

intention to treat a motion to dismiss as one for summary judgment "is not required where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (alterations in original) (quoting *Villante v. Dep't of Corrections of City of N.Y.*, 786 F.2d 516, 521 (2d Cir. 1986)). "Where both parties submit extrinsic evidence in support of their positions," a district court may fairly conclude that the parties reasonably recognized the possibility that the motion to dismiss might be treated as one for summary judgment. *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 379 (S.D.N.Y. 2005); *see also In re G & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985). In fact, "[e]ven where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted." *G & A. Books, Inc.*, 770 F.2d at 295.

Here, both parties submitted extrinsic evidence in support of their respective positions regarding the Insurance Defendants' motion to dismiss, indicating that both parties understood that the motion to dismiss might be converted into one for summary judgment. (*See* Decl. Steven M. Lucks Supp. Defs.' Mot. To Dismiss (Docket No. 10) ("Lucks Decl.") Exs. B, C, D, E; Mem. Law. Opp'n Defs.' Mot. To Dismiss (Docket No. 12) ("Pl.'s Opp'n") Exs. 1, 2). In addition, the substance of Defendants' motion focused almost entirely on the language of extrinsic documents, making it clear to Plaintiff that she should present all pertinent material in opposing the motion. And Plaintiff did in fact assume in her opposition that the Court would consider the external documents Defendants submitted in deciding the motion. *Cf. Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68-69 (2d Cir. 2008) (vacating the district court's conversion

of a motion to dismiss to a motion for summary judgment where, among other things, "the plaintiffs could not have known whether the court would in fact consider" the external evidence submitted by the defendants).  For all of those reasons, the Court concludes that Plaintiff "should reasonably have recognized" — and, in fact, did recognize — "the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings" and that converting the motion into a summary judgment motion is therefore appropriate.  *Hernandez*, 582 F.3d at 307.

That conclusion is not altered by the fact that Plaintiff is nominally proceeding *pro se*. To be sure, *pro se* parties are ordinarily entitled to special solicitude and, consistent with that, "must have unequivocal notice of the meaning and consequences of conversion to summary judgment."  *Hernandez*, 582 F.3d at 307-08 (internal quotation marks omitted).  The Second Circuit has made clear, however, that a lawyer representing herself is "ordinarily" entitled to "no such solicitude at all" from the court.  *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases); *accord Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n. 4 (2d Cir. 2001); *see also, e.g.*, *Fenner v. City of N.Y.*, No. 08-CV-2355 (BMC) (LB), 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("It is well settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required.").  Indeed, courts within this Circuit have observed that it would be "fundamentally unfair" to extend the special solicitude typically afforded *pro se* parties to submissions drafted by lawyers.  *CIT Grp./Commercial Servs., Inc. v. Prisco*, 640 F. Supp. 2d 401, 407 (S.D.N.Y. 2009); *accord Sullivan v. City of N.Y.*, No. 14-CV-1334 (JMF), 2015 WL 5025296, at *4 (S.D.N.Y. Aug. 25, 2015).  Plaintiff, as noted, is an attorney acting in her capacity as the Administrator of Decedent's Estate.  (*See* Pl.'s Opp'n 7).  Accordingly, the Court

has no trouble concluding that Plaintiff, as a lawyer, understood full well "the meaning and consequences of conversion to summary judgment." *Hernandez*, 582 F.3d at 307-08 (internal quotation marks omitted).  The Court will therefore treat the Insurance Defendants' motion to dismiss as a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

**B. Merits**

Applying those standards here, the Insurance Defendants' motion, treated as a summary judgment motion, must be granted.  In support of their motion, the Insurance Defendants submit the text of a Certificate of Insurance, the Group Policy under which Decedent's policy was issued, and the Master Application for that policy, as well as an affidavit confirming that each document was associated with Decedent's policy.  (Lucks Decl., Exs. B, C, D).  All three documents include terms expressly providing that Decedent's coverage automatically terminated on the last day of the month when she turned sixty-six.  (*See id.*, Ex. B, at 2 ("This insurance automatically stops . . . on the last day of the month during which you reach your 66th birthday . . . ."); *id.*, Ex. C, at 2 (same); *id.*, Ex. D, at 1 (indicating that "[c]overage ceases at age 66")).  It is undisputed that Decedent turned sixty-six in August 2010, almost three years before she died. It follows that, pursuant to the plain terms of Decedent's policy, she was not covered at the time of her death and the Insurance Defendants were (and are) not required to pay benefits.

Plaintiff's arguments to the contrary are unpersuasive.  First, she relies on two other documents related to Decedent's policy — the Credit Insurance Disclosure and Authorization and the Application for Group Life Insurance (Compl. 9-11) — that do not contain language indicating that the policy would terminate at the age of sixty-six.  (*See* Pl.'s Opp'n 2).  Relatedly, she contends that the Court should disregard the documents submitted by the Insurance Defendants because they were not signed by Decedent and there is "nothing in [those] document[s] that ties them" to Decedent's policy.  (Pl.'s Opp'n 4).  But contrary to Plaintiff's contentions, the plain language of the documents Decedent concededly signed "ties" Decedents policy to the Certificate of Insurance.  First, the Application for Group Life Insurance is, by its own terms, just that — an *application* for insurance, not the policy.  Plaintiff cannot plausibly

claim that Decedent understood the barebones application itself to contain the full terms and conditions of the policy she was purchasing.  (*See* Compl. 9).  Second, and more importantly, the Credit Insurance Disclosure and Authorization, which was signed by Decedent and attached to Plaintiff's Complaint, explicitly instructs the applicant to "review the Insurance Certificate that you will receive in the mail" for the complete terms and conditions of the group life policy. (Compl. 10).  Furthermore, by signing that document, Decedent specifically acknowledged that she would "have 30 days to examine the certificate" once it was sent to her and that she understood that she could cancel coverage at any time within that 30 day window.  (*Id.*).

Plaintiff seems to argue that the Insurance Defendants' motion should be denied because there is no copy of the *precise* Insurance Certificate issued to Decedent by mail in the record. (*See* Pl.'s Opp'n 2, 4).  Because the copy of the Insurance Certificate mailed to Decedent is apparently not available (and presumably lost), Defendants submitted a blank copy of the Certificate of Insurance that governed all policies issued under Wachovia's Group Policy along with an affidavit attesting that the same Certificate governed Decedent's policy.  (*See* Lucks Decl. ¶ 3; *id.* Ex. B).  Plaintiff does not argue that Decedent did not receive a Certificate of Insurance (as contemplated by the Disclosure and Authorization), nor does she purport to know what the terms and conditions contemplated in the Disclosure and Authorization actually were. (*See* Pl.'s Opp'n 2).  So Plaintiff does not (and cannot) seriously contest Defendants' affidavit attesting that the Certificate of Insurance submitted as Exhibit B in support of the Insurance Defendant's motion governed all life insurance policies issued under the group insurance plan, including Decedent's.  (*See* Lucks Decl. ¶ 3; *id.* Ex B).  Thus, there is no dispute of fact that the Certificate of Insurance submitted by the Insurance Defendants accurately reflects the "terms and conditions" governing the policy that Decedent purchased.  And because the plain language of

that Certificate of Insurance provides that Decedent's "insurance automatically stops . . . on the last day of the month during which [she reached her] 66[th] birthday" (Lucks Decl. Ex. B at 2), Plaintiff's claim based on the policy fails as a matter of law.

Finally, Plaintiff argues that, even if her claims based on the insurance policy fail, her claims under the Truth in Lending Act should survive because the loan agreement with Wells Fargo is allegedly deficient in various ways.  (*See* Pl.'s Opp'n 5-6).  But the Court need not reach those arguments at this juncture, as the pending motion concerns only Plaintiffs' claims against the Insurance Defendants, not Wells Fargo.  Nowhere in her Complaint does Plaintiff allege that the Insurance Defendants were in any way involved with the loan itself — indeed the Complaint makes clear that the life insurance policy, although acquired at the same time that the loan was received, was independent from the loan.  (*See* Compl. ¶ III(E) ("At the same time Decedent received the loan, she also purchased a single life insurance policy . . . .").  Additionally, language in the insurance application itself — explaining that the purchase of the insurance policy was "optional" and "not required to obtain" the loan agreement — confirms that the insurance policy is entirely distinct from the loan.  (*See* Compl. at 10).  Although Plaintiff makes general claims in her opposition to the effect that the Insurance Defendants "worked with" Wells Fargo to offer the loan (Pl.'s Opp'n 5), those allegations fall far short of making out even a plausible claim against the Insurance Defendants under the Truth in Lending Act.  *See, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (observing that plausibility generally requires that a plaintiff produce "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the theory of her claim); *see also, e.g.*, *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 764 n.4 (S.D.N.Y. 2006) ("[P]laintiffs cannot amend their complaint through a legal memorandum.").

## CONCLUSION

For the reasons stated above, the Insurance Defendants' motion is converted to a motion for summary judgment and GRANTED, and the Complaint is dismissed in its entirety with respect to them.  The Clerk of Court is directed to terminate Docket No. 8, to terminate AGAC and AIG as Defendants in this action, and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

SO ORDERED.

Date:   February 1, 2016
        New York, New York

JESSE M. FURMAN
United States District Judge